Would the clerk call the next case, please? 315-0477 Valley View School District 365-U, Appellee by Stephen McDonald v. Hartford Fire Insurance Company, Appellant by Albert Shillett. Mr. Shillett, good morning. Good morning, Your Honors. May it please the court, my name is Albert Shillett. I'm here on behalf of the appellant in this case. Your Honors, we're here today on a surety bond dispute brought by plaintiff trustees of Wage and Welfare Benefit Funds and a payment and performance bond surety, which is my client. Could you speak up just a little bit, please? I'm sorry, Your Honor. That's just a recording device. Okay, no problem, Your Honor. So we're here for a surety bond dispute by plaintiff trustees who are the appellees here this morning and my client, Hartford Fire Insurance Company, which was a performance and payment bond surety. We're here today, Hartford Fire, is to request that this court reverse the rulings from the circuit court below on motions for summary judgment and dismiss, as this court is capable of doing through its standover review, the claim that was asserted against my client's bonds as the claims untimely under the terms of the bonds in Illinois law. I think this case is sort of the hallmark example of the elevation of form over substance, where practical considerations and expressed terms of a statutorily compliant bond were totally disregarded and ignored by the circuit court, when it chose instead to actually imply language from a statute into a separate portion of this bond that was provided by my client in furtherance of a contractor's performance on three different grounds. Help me out here. You had a performance and a payment is your argument. Two separate bonds, is that your argument? Yes, Your Honor. Now, there was a great deal. I'm happy that you asked this question at the outset because there was a great deal of conversation, discussion, briefing, all this matter in the underlying proceedings about whether this is to be construed as one bond or two bonds in this case. And ultimately, I think the distinction in calling it one bond or two bonds is a distinction without a difference. When you look at the actual terminology of the bonds, the purpose of the bonds, the purpose of the Bond Act, and the four corners of the document that was presented in furtherance of these projects. So as an example, the Bond Act itself requires a bond to secure the contractor's completion of the work of the bonded contract that was entered into with the owner. The Bond Act also requires sufficient surety, a bond, that will cover the payment obligations to laborers, material men, suppliers, subcontractors, et cetera. So we're looking at the two primary goals and requirements of the Bond Act in this case. Help me out here. So performance, what's the remedy under performance? Failure to perform. Well, absolutely, Your Honor. So if you look at the bonds that were issued in our case, there's one bond number for the project. And the bond is essentially seven pages long. Pages one through four contain what are termed the performance bond portion of the document. Pages five through seven contain the payment bond. They share the same bond number. They share the same owner, the same amount of the contract, same description of the contract, the exact same purpose. But they operate to serve two different purposes. So under the performance bond, the very outset of the performance bond, it provides that both the contractor and the surety are jointly and severally bound to the owner to complete and satisfy the contractor's performance of the work on the project. Now the remedy, Your Honor, that you asked for is that there is then, there is a structure in place in the performance bond which requires the owner to provide notice of an intent to declare that contractor in default,  or in paragraph three of that bond, and then only after the owner has complied with those conditions in paragraph three of the bond, then the surety's obligations under paragraph four, five, and six of the bond are then triggered. The surety then has the option of taking over the work for the contractor to complete the project. The surety has the option of tendering another contractor as a replacement contractor. The surety has the option of financing the contractor who is in default to try to get them to complete the work. But the surety has some options there. And there's a great deal of case law in Illinois about the Saline Cameron and the Dragon construction case deal with the owner's breach of that obligation. Okay. Just honing down and editing it. Okay. And you have a one year on that. Is that correct? No, Your Honor. That is a two year. Now that's the performance. And I'd like to, in further answering your question, I'd like to draw the contrast between the payment bond portion on pages five through seven. That payment bond portion says, again, that the contractor and the surety are jointly and severally liable to the owner for the payment of all sums that are justly due to laborers, material men, suppliers, subcontractors, et cetera. Now the conditions for a claim against that bond are entirely different. It's not the same as the owner having to satisfy those conditions we talked about earlier with an intent to declare in default, et cetera. It requires the claimant to provide notice of a claim. And then once the claimant has provided notice within the requirements of the bond, then the surety has its liability triggered under the bond in a separate paragraph in that payment bond to respond. I don't understand how Lake County doesn't apply to this situation. And I know you attempt to distinguish Lake County by saying, well, in this case there's performance bonds and there's payment bonds. But the Supreme Court decision did not seem to put some kind of limitation in that kind of distinction. So I'm having difficulty understanding why when you look at the language of the – and, you know, that's in 2014. It's not that old. The Lake County Grading Company versus Antioch. Why that logic doesn't apply in this situation because there's no limitation in that, the way they're interpreting, you know, the statute. There's not a limitation they're placing and saying, oh, this is only in the unique rare circumstances where there's, you know, wasn't the other bond. Well, I can draw a number of distinguishing factors, Your Honor. And I think that the argument that's being made by Hartford Fire here today and in our briefs is not inconsistent with Lake County grading, and I'll tell you why. First of all, the subcontractor brought a lawsuit against an owner in that case for failure to obtain a payment bond. That is not the situation in our case. As a matter of fact, counsel who's in the courtroom here today on behalf of his client provided a proper notice of claim against a payment bond in 2007. It was specifically against Hartford's payment bond. Now, it wasn't until they filed suit in 2009, when they were time-barred under the payment bond, that they attempted to assert a claim under the performance bond. That's a big distinction between our case and Lake County grading. But it's also important because- What I'm keying in on Lake County grading is the language the Supreme Court is using in interpreting the statute and interpreting, you know, the bonds themselves. And when you say adding a provision where they bring in part of a statute as, you know, as part of the claim which would, the other side that supports their position. And they're interpreting the statute. They didn't have limitations and all that kind of stuff, and they didn't make these other distinctions. They say when you read the bond and you read the statute, this is what happens. So, Your Honor, they also cautioned- Isn't that what they say? They did, but it's a different situation because they did not have a payment provision. And their exact words, Your Honor, were that, quote, it is self-evident, however, that if a bond already has a provision for payment to subcontractors, it would be unnecessary to deem the payment language contained in paragraph three into that bond, end quote. That's paragraph 27 in the Lake County grading case. That is just a different case because there is no payment guarantee that's provided. And it's important in this case because- So what you're saying is that if the bond has a separate provision for payment, that the language in the bond would control when Lake County would not be an applicable case. Absolutely, Your Honor, assuming that the payment bond is in compliance with the Bond Act requirements. Okay. That is our provision. That is our contention. And these bonds that were provided by Hartford Fire in this case absolutely comply with the terms and requirements of the Bond Act. They provide every right that is required and mandated by the Bond Act in this case. And they serve the two policy purposes that the Lake County grading accord in 2014 articulated. And these are the policies that have been underlying this Bond Act for a while now, but just recently articulated by the Supreme Court. Number one is to protect the tax monies for the people of the State of Illinois to ensure that they're used for completion of projects when projects are incomplete because of a defaulting subcontractor. And number two is to ensure payment to subcontractors and suppliers. I want to highlight that because what we're actually, what this Court is going to be asked to do today with respect to affirming or reversing the ruling below will actually have a significant policy impact in the Illinois public construction industry. That issue was touched upon in our brief in regards to our arguments on the completion theory. Well, Lake County grading has had an impact on it. This whole area has. Well, that is absolutely true, Your Honor. Because, and I will tell you this, there has been a practice, although it's not part of the record, but while we're talking about these issues, there is a practice with regard to, for example, subdivision bonds, where it is solely a performance guarantee that a surety may underwrite. It is certainly, Lake County grading changed the surety industry's approach in the sense that they now realize that they have a bond act that is going to be applicable and they're going to have to deal with that. It's not just a performance guarantee anymore. It's a payment guarantee. That's what Lake County grading did. That's different, though, than a performance and payment bond surety that issues a performance and payment bond in one instrument to comply with the two requirements of the bond act fully. It's a different situation. So you're saying, okay, only thing under the act is requirement now under Lake County. We will redeem a payment if it's only performance. Yes, Your Honor. Is that correct? Yes, Your Honor. Simple. I have to summarize. Okay. And now you're saying that if, as a surety, we write under freedom of contract to provisions, performance and payment, that we've complied with the act and we should be bound by or the party should be bound by the contractual provisions under payment. Absolutely, Your Honor. Assuming that there is compliance with the statute. Illinois law is crystal clear that the surety's undertaken will be enforced pursuant to the terms of its agreement so long as it's proper and so long as it's a legal agreement. Okay. Now we have two separate time periods to bring a claim in your particular surety under that issue here, correct? Yes, Your Honor. Is there any general principle of law that would say you take the longest period? No, there isn't. Not in this case. And I'll tell you why, Your Honor. The Bond Act itself covers both completion and payment obligations. The Bond Act does not require any or include any time limitation for an owner to bring a performance claim against the contractor for completion of the project. None whatsoever. So that is the general four-year construction statute of limitations that will apply. However, the Bond Act does, while it's silent as to completion claims and performance claims, it does contain a one-year limitation period, the exact same limitation period that's set forth in our payment bond, I might add. The Bond Act does contain a one-year limitation period for claimants, for subcontractors, suppliers, and laborers who wish to assert a payment claim. So the Bond Act itself reflects that there is, that there are different time limitations that may be applicable. And there are probably very good reasons that can be articulated for that with respect to owners who need additional time to complete projects, to determine warranty obligations, et cetera, before bringing suit, as opposed to claimants who know that they are unpaid for their work to bring suit. But the fact is that the Bond Act recognizes that distinction and recognizes the difference in those two claims. The other thing that I would add is, the claim that is to be brought against the performance bond is the claim that's possessed by the owner, who has entered into the contract with the contractor. When does the payment, when can the person, you've got a one-year limitation, so you haven't been paid, so you make a claim. But a condition preceding under the payment bond is that you have to try to be paid, don't you? Yes, Your Honor. And as a matter of fact, the Bond Act requires 180 days. It sets forth, the Bond Act has a very specific limitation period for payment bonds, and it does not address claims for performance or completion whatsoever. The Bond Act recognizes the distinction. So I'm talking about payment now. Yes, sir. So before a condition proceeding, before you can go after the payment bond, is that you have to make, as I understand, when you look at the stuff, is that you have to take these other steps, right? And there are periods of time on that, right? Yes, Your Honor. So the window of opportunity is very, very short, right? Because you have to take this other step that you haven't gotten paid, you have to complete, you know, you get some kind of completion that they're not paying you before you can even file on the thing. So that's a period of time. So really, it's not a one-year thing. It's much shorter. Well, it's a one-year limitation period, Your Honor. So the requirement is to provide notice within a certain amount of time, the notice to the project owner and to the surety or to the project owner only, that you haven't been paid for the work. And the one-year period of time runs from the last date of furnishing work or the date that you provided your notice of your claim, whichever occurs first, essentially. In this case, we have a December 2007 notice of the claim, and, you know, no action, a claim against specifically the payment bond. I mean, that's their exact words in their claim documents. And we have no action until October of 2009 when they sought to assert You know, I would add that the court, when it issued its ruling in this matter, and I realize my time is up, the court or very close, am I up? Sorry. Well, I'll tell you, I will reserve for rebuttal. Thank you for your consideration. Thank you. Thank you. Mr. McDowell. May it please the court, I represent the trustees of the Will County, the local 176 fringe benefit funds. And it's our position that the circuit court properly determined that summary judgment should be entered in favor of the trustees for the unpaid contributions to the funds they administer under the terms of the performance bonds covering these projects. And I'll primarily focus upon the arguments that were made by counsel today, and the remaining items are dealt with in our brief. Initially, there was some question raised in oral argument today with respect to the issue of notice. I would note that in the record at page 60 in their answer, Hartford Fire did admit that the plaintiffs asserted bond claims against the reference bonds on December 14, 2007. And the issue of notice had not been litigated at all in the circuit court and I don't believe was even raised in the initial opening brief in this case, and was raised for the first time in the reply brief on pages 1 and 2 of it. And therefore, under Supreme Court Rule 341H7, it does not appear to be an appropriate item to be discussing today. Really, the central issue, I think, in this case is the Lake County grading case and the question of whether there existed one or two bonds with respect to this matter. If you paid attention and you read over the decisions of the circuit court, the circuit court was very careful to wait until this issue had been deposed and facts were presented before the district court determined this issue. In fact, the district court, I believe, denied summary judgment in two separate occasions saying, I need more evidence as to whether there is one or two bonds. And so what occurred then was that the deposition of a representative of Hartford, Kevin Scanlon, was taken. And that testimony we outline, I believe, at pages 11 through 14 of our brief. And it, in our view, pretty much unequivocally demonstrates that the payment bond and performance bond in this case were considered to be separate bond documents. And as noted, when this evidence was finally submitted to the circuit court, only at that time did the circuit court determine, yes, these are two separate bonds and that potentially Lake County grading should apply separately to each bond. And if we look at the language of the Public Construction Bond Act Section 1, it provides that each bond issued in Illinois, without distinction between performance and payment bonds, is deemed to include language guaranteeing payment of compensation of labor, whether that language is included in the bond or not. And so the Illinois Supreme Court's decision in Lake County grading we submit is simply a recognition of this construction of Section 1 of the Bond Act that this language is to be included in all bonds, including the performance bonds at issue here. And so it's our position, very simply, that this case is controlled by Lake County grading because each bond in this case, appropriately, must be considered to include the payment language that is involved here. What about the argument of your opponent that the period of time is long, that there's this period of time for it that Lake County doesn't apply because you've got two bonds here, you've got a performance, you've got a payment, unlike Lake County. And so once you have that, then you're stuck with a time period in the payment bond and that notice was filed all beyond that period of time. Our position with respect to that is the language of the statute says each such bond without making that distinction, and the Supreme Court never did make that distinction between cases where you have a payment bond and a performance bond. It simply said each bond, and that's the language that's involved in the statute and the language that the Supreme Court interpreted. Your opponent highlights that one phrase in Lake County, which says that we're not faced with this other situation, which he says it is faced here. You know, the language quoted in his argument. Well, again, I think our reference would simply be to the statute, Section 1 of the Public Construction Bond Act, which the court was constructing, and that language says each such bond without making a distinction in these cases. So once it's determined that the bonds were separate, as I think the Circuit Court did, and I believe appropriately based upon the facts that were presented, at that point we become entitled to rely on the longer period of limitations period because otherwise we would have a situation where the bond was deemed to include this language, but somehow the one-year period in a different bond should control our recovery under the payment bond, excuse me, the performance bond. And in this case, it was very clear from the outset that the assertion and the claims were made in this case on the basis of the performance bond. We did not go against the payment bond in this particular matter because of the limitations period issue. Mr. McDowell, our rules of construction tell us that we should construe to avoid absurdity. And what you're asking us to do is find that in this case there are two payment bonds, one that's implied in the performance bond and a second one that is standing alone that is clearly a payment bond. And one gives you one year, as apparently the statute requires, and the other one gives you two years. And you're asking us to just arbitrarily choose one that's not there over one that clearly is. I think our response to that would simply be that in this case two bonds were written. They were separate. The statute requires that and allows us to rely upon the inclusion of payment language in both the performance bond and the payment bond. And basically it would be up to those who issue bonds, if this is a concern, simply to consolidate, for example, into one bond, including different limitation periods. And that was, in fact, much of the argument that was at the circuit court level is that, well, this is one bond and we hear this to a certain extent in the arguments that were made today that, well, the payment bond portion, the performance bond portion, but the determination, the facts that were presented demonstrated that there were two separate bonds. And under the statute, those who are attempting to rely upon the bond are entitled to rely upon the terms of the statute, which are relatively clear on this point. This brings me back to my earlier observation. Are you out if it's construed as one bond? Because if it's construed as one bond, you've got an inconsistency in the one bond. Well, and, in fact, the circuit court noticed that as a potential issue, and that was one of the reasons, I think, why the judge said, well, let me get some more information, because she noticed that there was this issue that you posit as there being a potential conflict, and then do we apply the two-year or the one-year, and that does present an issue, you know. And so that was a concern the judge had. Is there some propositional law or case law out there or statutory clarification that when you have an inconsistent limitations period, that as perhaps a matter of equity, you go the longest? Yes, and I'm not specifically familiar with that, and that would seem like the equitable principle that should be followed here, but in this case, we chose to simply rely upon the simpler proposition that there were two separate bonds, so we had a two-year limitation period under the one that we could recover a bond. It sort of looks like Hartford did what you're saying should be done. I mean, the page numbering is sequential. It looks like it's one document that includes the performance portion and the payment portion, that they have the two separate statutes of limitations, but it's not like you couldn't see that there was a payment portion. They were fastened together and had sequential paging. That is an issue, and that was actually something that was dealt with in the deposition of Mr. Scanlon, and it was noted, well, even though there were sequential paging, Hartford still considered them to be two separate bonds that could be sold separately and the like, so again, it appeared from the evidence that was presented in this case that the bonds were separable. So then we're back to an absurdity. Well, we wouldn't submit an absurdity so much, because what we have here is a case where if one has two separate bonds, and if the statute particularly requires that any bond include the payment language that's involved here, we basically are entitled to rely upon that language and that statute in determining that, yes, we have this performance bond on which we do have a claim that could extend for a two-year period. I'll ask opposing counsel this. The explanation I got for there's a difference between performance and payment, it sounded to me like, and they can clarify for me, that performance two years in terms of notice gives the obligor to basically perform in kind, and that there's, before Lake County anyway, that was the only obligation, not payment. The obligor would assume any cost thereof of performance, but would provide intended performance, workmanship-like manner, etc., etc. on their own dime, and the obligee, value of view in this case, would be indemnified by that performance. Is that a fair statement? Well, the performance bonds in this case, because of the statute, are deemed to include the payment of labor. Under the Lake County case. Right, under the Lake County case and under the Section 1 of the Public Construction Bond Act, and that's basically the terms we're relying on in this matter, and so that's really the basis of the claim with respect to the performance bond in this matter. Well, if there's nothing further, I will rely for the rest of my presentation upon the briefs I presented. Thank you. Thank you, Mr. McDonald. Did you say Shor? Yes, Your Honor. Justice McDade, since it was your word, I'm going to repeat it. Absurdity. That's exactly what it is. That's exactly what the circuit court's ruling turned the payment bond that is statutorily compliant in every way. They have not identified one deviation in that payment bond from the requirements in the statute. They have not identified one deviation. By essentially ignoring pages 5 to 7 of a contract, which Illinois considers these bonds a contract, by just throwing out pages 5 to 7 and then implying and reading in a provision to more favorable terms that were intended to inure to the benefit of the owner of the project and not to subcontractors, suppliers, and material men, just renders the payment bond a superfluous nullity that flies in the face of every tenant of contractual interpretation in the state of Illinois. In this case, is there one contract or two contracts? There is a contract for Grace Electrical Construction Company that they entered into with the owner on these projects. And if you turn to the bonds themselves. I'm talking about the bond contract. Are there two bond contracts or one? Well, they're separate. This is a distinction that we continue to make. And there's been very artful representation of our clients in this matter relating to this issue. Are there two separate bonds? There's two separate bonds, but they're included in one instrument. And I say that they're two separate bonds. It's too easy of a distinction to make to simply state, well, these are two different bonds. They're not. They're related. They're part of the same instrument. They're one bond contract with a performance and a payment bond. They provide two distinct security. With inconsistent limitation period. They're not inconsistent at all, Your Honor. They're different. Well, the one inures to the benefit of the owner, the two years. And the one year under the payment bond inures to the benefit of subcontractors, suppliers, and material men. And that one year is fully compliant with the Act. But I'm relating this to the Supreme Court case. Yes, Your Honor. When the Supreme Court case says this stuff is in there, then arguably that it's inconsistent. When you've got the Supreme Court saying it doesn't say the limitation you're placing, well, this is to the benefit of this group and this is only to the benefit of this other group. Well, the Supreme Court doesn't say that in the Lake County case, right? It does in a roundabout way, Your Honor. I mean, it identifies the benefits or the purposes of the Bond Act and the requirement in the Bond Act for a completion security and a payment security. I mean, so it does get to that point. And in its reliance on strict interpretation in Lake County grading of the Bond Act, the court did not identify or state that there's an inconsistency in the Bond Act itself in that performance claims are subject to one time limitation in the Bond Act, whereas payment claims are subject to a one year. Well, if it was deemed to be an inconsistency with one contract, then would you do contract interpretation? How would you interpret that? Against Hartford or in favor of Hartford? Well, the inconsistency I think is entirely acceptable because it's consistent with the Bond Act itself and the requirements of the Bond Act. So in this case, I think you have to read each of the security obligations as part of the total, as part of the whole, the whole document, the four corners of this agreement, pages one through seven, which contain both a security provision for owners and a security provision for subcontractors and suppliers. They may contain different limitation periods, but they're different limitation periods for different types of claims, for different types of claimants. So it's entirely, it's inconsistent in the strict letter of the word, but it's not inconsistent with respect to the parties that would be affected or the parties who would be interested. I have a little issue here. Yes. That you're saying that payment is for the, what did you say? For the benefit of the? Subcontractors, suppliers. This bond is for the benefit of the owner in all aspects of it, isn't it? Because it's the owner that's going to be sued or leaned upon. Well, the owner, it's the contract funds that would be leaned upon your owner. But let's take that just to the next step. No, the reason you have this bond is to protect the owner. And, of course, in public it's to protect the taxpayers, as you say. Yes, Your Honor. Okay. That was Lake County Grading's exact description. Quite frankly, the owner doesn't care about the subcontractors. The owner, in self-interest, cares about itself. Well, the owner would very much care about how this court responds to the circuit court's ruling in this case. Because I mentioned the policy implication of the court's affirmance of the underlying opinion in this case. If this court were to rule that the performance bond, that a payment provision is read into every performance bond, notwithstanding the existence of a specific payment bond, then what happens is instead of having a performance bond that guarantees for a $1 million contract that the surety will be liable for completion of the work for the entire $1 million, that means that if that penal sum, which under Illinois law is the limit of the surety's liability, any payment claims can come out of those funds. And so that depletes the available contract funds for completion of the project. Right now, owners enjoy two protections. They have a payment bond that protects them from claims in the amount of the contract, and they have a performance bond that protects them in the amount of the contract from any completion issues. So what we're talking about is an affirmance of the court's ruling, the circuit court's ruling in this case, actually puts the sureties in a position that I'm probably going to get in trouble for arguing into this court, but it puts them in a position of cutting their liability essentially in half. They don't have to. They don't have to issue the payment bond. They can issue the performance bond without a payment provision. We can imply the payment provision, and the owner will just get half of the security that the owner otherwise would have enjoyed. That is a profound change to Illinois public contract law that we've seen over the last decade or so. Was Lake County a profound change? Yes, Your Honor. Yes, it is a profound change. It is. But Lake County provides the minimum. I'm sorry, Your Honor. But what the Supreme Court did in Lake County was to imply a payment bond in order to provide protection to the owner that they would not otherwise have had. Yes, Your Honor. In this case, the owner has that protection already. Exactly, Your Honor. Exactly. As my time is up, I appreciate the Court's consideration of these issues. I also reserve the other matters set forth in our brief and hope you give consideration to that as well. Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The Court will stand in brief recess for a panel.